EDWIN S. THOMAS, Defendant in Error, vs. STEPHEN D. SEAMAN et al. Plaintiffs in Error.

*Opinion filed October 24, 1916.*

1. CONTRACTS—*what is not a waiver of the purchaser's right to rescind contract.* If the vendor in a contract for the sale of land is in default for failure to deliver a deed and abstract after the purchaser has made his second payment as called for in the contract, the purchaser does not waive his right to rescind the contract for such default by investigating offers for the land and negotiating with third parties with respect to selling or trading it.

2. SAME—*what amounts to an unreasonable delay.* Where a contract for the sale of irrigated land provides that the purchaser shall be entitled to possession of the land and to a deed and abstract of title upon making his second payment, and further provides that in case of a breach of contract by the seller the purchase price, and interest thereon, shall be received in full satisfaction of all claims, and that in case of default by the purchaser he shall forfeit all payments, a delay of more than a year in delivering the deeds is unreasonable and puts the seller in default.

3. SAME—*right of a purchaser to remain in possession after a breach by seller.* A purchaser of land by remaining in possession after the seller's default in delivering a deed and abstract of title does not waive his right to rescind the contract in accordance with its terms, where the contract gives him the right to remain in possession so long as he is not in default, and where his continuance in possession was due to the seller's insistence that there be an adjustment of the controversy growing out of the failure to deliver the deed.

4. SAME—*purchaser does not waive right to rescind by negotiating for settlement.* A purchaser of land who has a right, under his contract, to rescind the same for the default of the seller in failing to deliver the deed does not waive such right by stating his willingness to receive the deed under certain conditions in regard to payment of damages which were never complied with by the seller.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding.

HOWARD M. CARTER, and FRANCIS W. WALKER, (W. W. GURLEY, of counsel,) for plaintiffs in error.

HAASE & HOWARD, for defendant in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Defendant in error, Edwin S. Thomas, brought suit in the municipal court of Chicago against plaintiffs in error, Stephen D. Seaman and Henry A. Blair, to recover the amount paid on a written contract for the purchase of an 80-acre tract of irrigated land in Conejos county, Colorado, together with eighty shares of capital stock of the Seaman Syndicate Ditch Company. The action was brought to rescind the contract and recover back the purchase money paid, and $1000 in addition for improvements placed on the land. A trial was had before the court and a judgment was rendered in favor of defendant in error for $3334.25. A motion for a new trial was made and overruled and judgment entered for the above amount. The plaintiffs in error prosecuted an appeal to the Appellate Court for the First District, which affirmed the judgment of the lower court. A writ of *certiorari* was allowed by this court, and the cause is now in this court pursuant to the mandate of such writ.

On March 11, 1911, the defendant in error, Edwin S. Thomas, of Washington, Iowa, entered into the contract in question with Stephen D. Seaman, of the city of Chicago, for the purchase of the 80 acres in question and eighty shares of the capital stock of the Seaman Syndicate Ditch Company, a company that had been formed to furnish water for the purpose of irrigating these lands. The purchase price of the land was $5400, payable $1800 on the execution of the contract, $1200 on or before March 11, 1912, $1200 on March 11, 1913, and $1200 on March 11, 1914, each of the deferred payments being evidenced by a promissory note payable to the order of Seaman, the last two notes

bearing interest at the rate of six per cent per annum, payable semi-annually. The eighty shares of stock in the Seaman Syndicate Ditch Company were pledged as security for the payment of these notes. The contract further provided that when the note due on or before March 11, 1912, was paid, the buyer should be entitled to an abstract of title and warranty deed to the land, subject to the existing rights and reservations made in the contract and the payment of the two remaining installments of the purchase price. It also contained the following among other additional provisions printed on the back thereof, viz.:

"3. While buyer is not in default he may have possession of said premises and use of water on said ditch stock until title by deed to said land and ditch stock is delivered.

"4. If seller fails at any time to carry out the terms of this contract, then all the purchase price, and the interest that has been paid at such time, may be returned to buyer by seller in full accord and satisfaction of all claims of buyer hereunder.

"5. If the buyer fails to carry out this contract all sums theretofore paid are to be retained by seller as rent and liquidated damages, and seller shall have right to re-enter and take possession of said premises and terminate buyer's use of water hereunder. The seller may also, at any time buyer is in default under this contract, terminate the same by giving buyer notice by mail, directed to buyer at his post-office address given herein.

"6. Time shall be the essence of this contract, and if at any time the same shall be forfeited and determined in the manner above provided, the buyer hereby covenants and agrees to surrender and deliver up said premises peaceably to seller immediately upon such termination, and if buyer remains in possession of said premises after such termination he shall be deemed guilty of a forcible detainer of said premises under the statute, and shall be subject to all conditions and provisions above stated, and to eviction and

removal, forcible or otherwise, with or without process of law."

Defendant in error made the first payment of $1800 on the execution of the contract, and between March 11 and April 4, 1911, entered upon the land and began farming it. On April 4, 1911, he made the second payment of $1200 and demanded of Seaman the abstract and deed to the land pursuant to the terms of the contract and to which he was then entitled according to the terms of the contract. No deed or abstract was delivered to defendant in error at that time or at any other time until December 26, 1912, when a deed and abstract were tendered to him at Fairfield, Iowa, and refused by him for the reason that he claimed $1200 damages for delay in delivering the deed with a clear title to the land. In April, 1912, defendant in error again demanded of Seaman the deed and abstract, and stated that if the same were not delivered at once he would start suit to recover back the purchase money. This suit was commenced on June 4, 1913. Plaintiffs in error admit they were in default in complying with the terms of the contract, but insist that defendant in error has waived his right to insist upon such default by reason of his continuing in possession of the property after the time specified in the contract for the delivery of the deed and abstract, by his letter written to them in respect to the land, and by negotiations had with other parties with a view of selling or trading the property in controversy to them for other land.

On July 17, 1912, a circular letter was sent to defendant in error stating that an adjustment of the difficulties among the members of the Seaman syndicate was being made and that it was necessary to have an exact statement of the condition of each account. In this letter the purchase price of defendant in error's land is given as $5400, amount paid $3000, balance of $2400 unpaid, due March 11, 1913 and 1914, respectively, with interest at six per cent. The letter further stated that it was the desire of the syndicate

that his rights as purchaser should be fully protected, and it would greatly assist them in so doing if he would advise them if the statement showed his account correctly. On August 12, 1912, defendant in error replied to this letter, stating that he had been entitled to a deed for about a year and four months, which he should have received upon making the second payment; that the above account was correct, only that he was entitled to some favors, and this must be granted by a liberal deduction of interest, and some damage done his crops, amounting to $80, that they had agreed to pay and which he wished deducted from the above amount.

On September 28, 1912, defendant in error received a letter advising him that the Seaman syndicate had been dissolved and its property divided up, a part of it going to Seaman and a part of it to Blair, and that the land purchased by him was in that allotted to Blair, who was arranging to have the blanket mortgage removed from the lands, so that within a short time he would be in a position to give every purchaser entitled thereto a deed to the land; that the business would be continued along business lines, which he thought would be satisfactory to defendant in error, and stated that he would count on his co-operation in the work, which he trusted would be done to their mutual benefit, and asked where he expected to be for the next thirty days. On October 1, 1912, defendant in error replied to this letter, stating that he was glad to learn the Seaman people were getting things straightened out; that he could depend upon his helping them all he possibly could, and would be glad to have him call upon him either at his home or at Fairfield, Iowa.

There are other letters and telegrams in evidence of negotiations had between defendant in error and O'Connor Bros., of Grand Forks, North Dakota, during November and December, 1912, relative to a trade of the 80 acres in controversy in part payment for 320 acres of land in North Dakota. The plaintiffs in error were not parties to these

negotiations and do not appear to have known of the same until after they were terminated, or to have in any way altered their position or conduct in the matter on account of the negotiations had between the defendant in error and O'Connor Bros. At the time these negotiations were pending plaintiffs in error were urging defendant in error to make some kind of a settlement of their controversy and take the land. When the offer was made for an exchange of properties defendant in error had a right to investigate the advantages of such proposition, and might do so without altering the status of his relations with plaintiffs in error or waiving his right to rescind the contract by reason of the breach on the part of plaintiffs in error. We think the evidence, therefore, of these negotiations had no material bearing upon the issue in this case and that the court did not err in disregarding them.

By the terms of the contract defendant in error was entitled to an abstract of title, deed and possession of the land as soon as he made his second payment. This was made on April 4, 1911. On that date he became entitled to his abstract of title and deed to the property and made a demand on Seaman for the same in accordance with the provisions of his contract. Seaman promised to deliver them within a few days but failed to do so. The evidence tends to show that between that time and April, 1912, defendant in error made other demands upon plaintiffs in error for the abstract and deed, and at each time was put off with the promise that they would be submitted within a short time or a few days. It was never done until December 26, 1912, or a year and eight months after defendant in error was entitled to his deed under the contract. By the sixth clause of the contract time was the essence of the contract. By the third clause defendant in error was entitled to possession of the premises so long as he was not in default, and by the fourth clause it was agreed that in case of default of the seller the purchase price, and in-

terest thereon, should be received in full accord and satisfaction of all claims under the contract. By the fifth clause it was provided that if the buyer failed to carry out the contract all payments made thereunder should be retained by the seller as rent and liquidated damages, and that at any time the buyer was in default the seller might terminate the contract by giving notice to him at his post-office address as given in the contract. Contracts of this character, which impose upon one of the parties to it forfeiture of all of his rights under it in consequence of the failure to literally comply with its obligations, ought not to be so construed as to allow the other party an unreasonable length of time to perform that part of the contract which he contracted to perform in case of a breach by him. In *Harding* v. *Olson,* 177 Ill. 298, we held that a delay of four months in delivering the deed pursuant to the contract was an unreasonable delay. We think the rule announced and applied there controls this case.

Plaintiffs in error do not deny that they were in default in the performance of their part of the contract but rely upon acquiescence in the breach and waiver by defendant in error of such default. We think the evidence fails to make out such case. Defendant in error insisted, as soon as he made his second payment, on being furnished with the abstract and deed according to the terms of his contract. While it is true the further negotiations between the parties show a willingness to waive the breach and receive a deed upon certain conditions, it does not show defendant in error made an unqualified waiver of his right to insist upon the forfeiture for such default. On the contrary, his first letter shows that he insisted damages must be allowed him before he would complete the contract. The same insistence is found in all the subsequent negotiations between the parties. Plaintiffs in error never complied with these conditions. The fact that he remained in possession of the property after his right to rescind had accrued is unimpor-

tant when it is considered that he had a right, under the terms of the contract, to enter as soon as his second payment was made and to remain in possession until he made default in his part of the contract, and that his continuance in possession after his right to declare forfeiture accrued was due to the insistence by plaintiffs in error that there should be an adjustment of the controversy growing out of such default in their part of the contract.

For the reasons given, the judgments of the Appellate Court and municipal court of Chicago will be affirmed.

*Judgment affirmed.*